26CA0548 Peo in Interest of Wolf 05-14-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 26CA0548
Pueblo County District Court No. 26MH30029
Honorable Amiel Markenson, Judge

---

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of Stephen Christopher Wolf,

Respondent-Appellant.

---

ORDER AFFIRMED

Division I
Opinion by JUDGE DUNN
J. Jones and Fox, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 14, 2026

---

Cynthia Mitchell, County Attorney, Kate H. Shafer, Special Assistant County Attorney, Pueblo, Colorado, for Petitioner-Appellee

Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant

¶ 1     Stephen Christopher Wolf appeals the district court's order authorizing the involuntary administration of medication. We affirm.

## I.     Background

¶ 2     Wolf was committed to the Colorado Mental Health Hospital in Pueblo (CMHHIP) after being found incompetent to proceed in a criminal case. He was diagnosed with psychosis and displayed, among other things, paranoia and hallucinations. Wolf refused recommended medical treatment.

¶ 3     After he exhibited escalating aggression toward staff, including "swinging and kicking" at them, Wolf was given emergency medication. The People then petitioned for authorization to continue administering antipsychotic and mood stabilizing medications to Wolf.

¶ 4     At an evidentiary hearing, Dr. Hareesh Pillai — the psychiatrist supervising Wolf's treatment — testified about Wolf's history of mental illness and his diagnosed psychosis and accompanying symptoms. He also described the requested medications, how they treat Wolf's mental illness, and the possible

side effects. And Dr. Pillai opined that the medications were necessary to treat Wolf's mental illness.

¶ 5    Wolf also testified. He did not admit to having a mental illness. He explained that he wanted to participate in treatment decisions and described various side effects that he had experienced from the medications, including vertigo, sedation, drooling, and feeling like his "organs are failing."

¶ 6    The district court granted the petition. It found that Dr. Pillai had testified "credibly and persuasively" and that the People had proved all four elements of the test set forth in *People v. Medina*, 705 P.2d 961, 973 (Colo. 1985). The court issued an order authorizing the involuntary administration of the requested medications.

## II.    Applicable Law and Standard of Review

¶ 7    A district court may order the involuntary administration of medication if the People prove by clear and convincing evidence that (1) the patient is incompetent to effectively participate in the treatment decision; (2) the treatment is necessary to prevent a significant and likely long-term deterioration in the patient's mental health condition or to prevent the likelihood of the patient causing

2

serious harm to himself or others at the institution; (3) a less intrusive treatment alternative is not available; and (4) the patient's need for treatment is sufficiently compelling to override any bona fide and legitimate interest of the patient in refusing treatment. *Id.*[1]

¶ 8     Application of the *Medina* test involves mixed questions of fact and law. *People v. Marquardt*, 2016 CO 4, ¶ 8. We defer to the district court's factual findings if they have record support and review its legal conclusions de novo. *Id.* It is for the district court, as the fact finder, to determine the credibility of witnesses; the sufficiency, probative effect, and weight of the evidence; and the inferences and conclusions to be drawn from the evidence. *People in Interest of R.C.*, 2019 COA 99M, ¶ 7.

¶ 9     When a patient challenges the sufficiency of the evidence supporting an involuntary medication order, we must affirm if the

---

[1] We recognize that, when the purpose of administering medications is to restore competency in a criminal case, courts usually must apply the Supreme Court's test from *Sell v. United States*, 539 U.S. 166, 180-81 (2003). But the parties do not dispute that *People v. Medina*, 705 P.2d 961, 973 (Colo. 1985), provides the appropriate analytical framework here. We agree, given that the purpose of the involuntary treatment was, in large part, to prevent Wolf from causing serious harm to himself or others. *See Sell*, 539 U.S. at 181-83.

evidence, viewed as a whole and in the light most favorable to the People, is sufficient to support the order. *People in Interest of R.K.L.*, 2016 COA 84, ¶ 13. The treating psychiatrist's testimony may suffice. *Id.* at ¶ 30.

## III.    Discussion

¶ 10    Wolf challenges the sufficiency of the evidence supporting the district court's order. He specifically contends that the evidence was insufficient to support the court's findings that the People had established the first, third, and fourth *Medina* elements. We disagree.

## A.    The First *Medina* Element

¶ 11    The first *Medina* element requires the People to prove that the patient is incompetent to effectively participate in the relevant treatment decision. *Medina*, 705 P.2d at 973. This element is satisfied if the court finds that "the patient's mental illness has so impaired his judgment as to render him 'incapable of participating in decisions affecting his health.'" *Id.* (citation omitted).

¶ 12    The district court found that Wolf has "no or limited insight into his mental illness and is incapable of making informed

treatment decisions" based on his history of psychotic symptoms and unwillingness to voluntarily participate in treatment.

¶ 13    The record supports the court's findings.  Dr. Pillai testified that Wolf does not have insight into his mental illness and that he is incompetent to effectively participate in treatment decisions.  Dr. Pillai added that Wolf "does not appear to understand that he suffers from" psychotic symptoms and needs medication to treat the symptoms.  Underscoring that point, Wolf told Dr. Pillai that "he did not need medications."

¶ 14    Largely disregarding this testimony, Wolf relies on his own testimony that he wanted to participate in medication decisions.  But Wolf refused to say whether he has a mental illness and testified that he's "not psychotic."  Though Wolf says he simply "exercised his rights by declining to state whether he has a mental illness," he also never admitted that he needed any medication and never agreed to voluntarily take any medication.  That Wolf did not acknowledge his mental illness or his need for treatment is evidence that he is not able to effectively participate in treatment decisions.  *See People in Interest of Strodtman*, 293 P.3d 123, 132 (Colo. App. 2011) (affirming finding that patient was incompetent to effectively

5

participate in treatment decision because, among other reasons, she did not believe she had a mental illness and had not "embraced her need for treatment").

¶ 15 And though Wolf argues that he understands his legal circumstances because he requested consultation with his attorney before talking to Dr. Pillai about medications and side effects, he doesn't explain how this request establishes that he understands the severity of his mental illness and the need for the requested medications.

¶ 16 In any event, the court credited Dr. Pillai's testimony that Wolf lacks insight into the severity of his illness and is incompetent to effectively participate in treatment decisions. Thus, the evidence was sufficient to support the court's finding that the first *Medina* element was satisfied.

### B. The Third *Medina* Element

¶ 17 The third *Medina* factor requires the court to determine that there is no less intrusive alternative to the proposed medication. This factor "encompasses not only the gravity of any harmful effects from the proposed treatment but also the existence, feasibility, and efficacy of alternative methods of treating the patient's condition or

of alleviating the danger created by that condition." *Medina,* 705 P.2d at 974. A "'less intrusive alternative' constitutes an available treatment that has less harmful side effects and is at least as effective at alleviating a patient's condition as the proposed treatment." *Strodtman,* 293 P.3d at 133 (citation omitted).

¶ 18     Dr. Pillai testified that Wolf requires the requested medications to treat his psychosis. He specifically explained how the medications treat psychotic symptoms like hallucinations, paranoia, and delusions and can improve impulsivity, disinhibition, and aggression. And he testified that no alternative methods of treatment would be as effective and less intrusive than the requested medications.

¶ 19     Though Wolf argues that allowing him to take medication on a voluntary basis is a less intrusive alternative, and that he wants a collaborative role in his treatment, Dr. Pillai testified that Wolf did not acknowledge he needed medication and had refused treatment. And Wolf never testified that he would take any medication without a court order.

¶ 20     The record therefore supports the district court's finding that the third *Medina* element was satisfied.

## C.    The Fourth *Medina* Element

¶ 21    In evaluating the fourth *Medina* element — whether the patient's need for the requested medication is sufficiently compelling to override a bona fide and legitimate interest in refusing it — a court must consider "whether the patient's refusal is bona fide and legitimate" and, if it is, "whether the prognosis without treatment is so unfavorable that the patient's personal preference must yield to the legitimate interests of the state in preserving the life and health of the patient placed in its charge and in protecting the safety of those in the institution."  *Medina*, 705 P.2d at 974.

¶ 22    The district court acknowledged that Wolf had experienced some side effects and implicitly found that Wolf's concerns about side effects were bona fide and legitimate.  But it found that Wolf's prognosis without treatment "is so unfavorable" that his "personal preference must yield" to the state's "legitimate interests . . . in preserving" Wolf's life and health.

¶ 23    Wolf maintains that his desire to avoid side effects is a bona fide and legitimate interest for refusing the requested medications. And he says that he "expressed a willingness" to work with the treatment team "to identify less invasive or more tolerable treatment

8

alternatives." But Dr. Pillai testified that there are no effective and less intrusive treatment alternatives and that side effects would be monitored and could be treated.

¶ 24 While we do not minimize Wolf's experienced side effects, Wolf doesn't dispute his unfavorable prognosis without the requested medications. Indeed, Wolf doesn't contest the district court's finding on the second *Medina* element — that the medications are necessary to prevent a significant and likely long-term deterioration in his mental health condition. And Dr. Pillai confirmed that, without medication, Wolf's mental condition would deteriorate, and he would pose a risk of harm to others.

¶ 25 We therefore conclude that the record supports the district court's finding that the fourth *Medina* element was satisfied.

IV.   Disposition

¶ 26 The order is affirmed.

JUDGE J. JONES and JUDGE FOX concur.